[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
FINDING RE: PETITION FOR TERMINATION OF PARENTAL RIGHTS
The child's date of birth is February 24, 1988; he was committed to the care and custody of the Commissioner of the Department of Children and Youth Services (DCYS) as an uncared for child (specialized needs) on December 11, 1990. The mother of the child is Tammy G., date of birth November 19, 1967; the father is Bobby D., date of birth May 3, 1964. Respondent/mother has executed a written consent to terminate her parental rights. The instant petition was orally amended to allege the consensual ground under General Statutes Section 17a-112(b) as a basis for termination of the mother's parental rights. With respect to respondent/father, the petition alleges statutory grounds under Section 17a-112 (formerly Section 17-43a(b)) (1) (Abandonment), (2) (Failure to Rehabilitate), and (3) No Ongoing Parent-Child Relationship). This termination petition was filed by DCYS on March 24, 1992.
Notice and Jurisdiction
Tammy G.'s address is shown on the termination petition as 10 Green Street, Apt. D-1, Hartford; the return of service indicates personal (in-hand) service on respondent/mother, which service was confirmed by the court on April 14, 1992.
Bobby D. is named on the petition as "Whereabouts Unknown." Pursuant to the court's order of notice, publication was effected through legal advertisement in The Hartford Courant on April 1, 1992; notice by publication was confirmed by the court on April 14, 1992. Respondent/father has not appeared.
Service has been effectuated in accordance with the requirements of law, and this court has jurisdiction to hear and adjudicate the instant petition. General Statutes Sections 17a-112, 45a-716, and 45a-717.
Standard of Proof CT Page 7732
The term "termination of parental rights" is statutorily defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent or parents so that the child is free for adoption except that it shall not affect the right of inheritance of the child or the religious affiliation of the child." General Statutes Section45a-707(g). It is a judicial matter of exceptional gravity and sensitivity. Anonymous v. Norton, 168 Conn. 421, 430
(1975). Termination of parental rights is the ultimate interference by the state in the parent-child relationship and, although such judicial action may be required under certain circumstances, the natural rights of the parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651 (1972); In Re Juvenile Appeal (Anonymous), 177 Conn. 648, 671 (1979).
The integrity of the family unit is protected by theNinth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, Stanley v. Illinois, supra. Both the child and the parent(s) have constitutionally protected interests in the integrity of the family. Santosky v. Kramer, 455 U.S. 75
(1982). And, the "rights of parents qua parents to the custody of their children is an important principle that has constitutional dimensions." See: In Re Juvenile Appeal,187 Conn. 431, 435 (1982).
The constitutional guarantee of due process of law requires that the statutory ground(s) for termination of parental rights be established by "clear and convincing evidence, not merely a fair preponderance." Santosky v. Kramer, supra. Accordingly, the standard of proof as mandated by Conn. General Statute Section 17a-112(b) and Conn. Prac. Bk. 1049 is "clear and convincing" evidence. See: e.g. In Re Juvenile Appeal (84-3), 1 Conn. App. 463
(1984).
Termination of parental rights is in two stages: the adjudication and the disposition. The adjudicatory stage involves the issue of whether the evidence presented established the existence of one or more of the statutory grounds as of the date the petition was filed. In Re Juvenile Appeal (84-AB), 192, 254, 262 (1984); In Re Nicolina T., 9 Conn. App. 598, 602 (1987); In Re Luke G.,40 Conn. Sup. 316, 324 (1985). Only upon establishment of one or more of the statutory grounds may inquiry be made regarding the ultimate best interests of the child. In Re Juvenile Appeal CT Page 7733 (84-AB), supra at p. 262. However, since Section 17a-112(b) sets forth the statutory grounds for termination in the disjunctive, one ground only need be established for the granting of the petition. In Re Juvenile Appeal (84-BC),194 Conn. 252, 258 (1984); In Re Nicolina T., supra,.
Factual Findings
On May 7, 1992 respondent/mother executed a written consent to terminate her parental rights to her child, Terrell D.; on June 5, 1992, the court thoroughly canvassed Tammy G. regarding the written consent to terminate. The court found, in open court on the record (6-5-92), that respondent/mother executed the consent to terminate freely, intelligently, knowingly, and voluntarily, with a full understanding of the consequences thereof, and after the adequate and effective advice and assistance of counsel. The court hereby finds that petitioner had established, by clear and convincing evidence, the consensual ground for the termination of Tammy G.'s parental rights under General Statutes Section 17a-112(b).
Terrell D. was born on February 24, 1988 at twenty-seven weeks gestation (three months premature) weighing 1 lb. 9 ounces; the child was on a ventilator for respiratory assistance for the first month of his life and, thereafter, was discharged from the hospital at age three months, weighing 4 lbs. 12 ounces. Terrell was followed at the Saint Francis Hospital Pediatric Primary Care Center and was observed as making reasonably good progress regarding weight and general development until age eight months. However, at about that point, severe developmental problems developed and the child was diagnosed with cerebral palsy and mental retardation; Terrell G. will quite probably never walk, will not have the ability to speak, and will not develop a capability for any self-care activities. The child developed a seizure disorder at approximately fifteen months of age, and at seventeen months, he was admitted to Newington Children's Hospital. The initial seizure therapy had severe side effects and he was discharged on Clonopin; two months later the child was readmitted and placed back on the initial therapy. The return to the initial therapy proved unavailing, there was later a third admission to Newington, and Terrell was placed on another medication (Valproic acid); the result was fairly good seizure control for roughly eleven months, but in late 1991, signs of toxicity to the medication resulted in an admission to St. Francis Hospital.
In addition to the above, Terrell G. suffered severe respiratory problems resulting in three admissions to CT Page 7734 St. Francis Hospital at ages seventeen months, twenty-five months, and twenty-six months; these admissions were to address and treat complications resulting from asthma. In the course of an elective evaluation at age twenty-eight months, conducted at Hartford Hospital, it was determined that Terrell needed a fundoplication (tightening of the valve between the stomach and the esophagus) to prevent regurgitation of stomach contents into the esophagus and respiratory tract; the procedure proved successful and the child's asthmatic difficulties partially abated, although he remains on medication for respiratory problems.
Additionally, the child has had several significant weight losses since age thirteen months. Initially, the rate of weight gain was observed to have decreased without explanation. At nineteen months, a sudden weight loss over two days was attributed to recurring seizures with secondary inability to feed. At about twenty-one months, the child was admitted to St. Francis Hospital suffering from dehydration and additional weight loss; Terrell D. responded readily to inpatient management with rapid weight gain. Similarly, at age twenty-nine months, he was admitted to St. Francis following a protracted period of chronic nausea which resulted in an alarming weight loss; again, upon admission the vomiting ceased almost immediately, the child ate readily, and there promptly occurred a rapid weight gain. In September 1990, when the seizure medication toxicity, referred to above, was determined from laboratory testings, it was again found that the child's weight had dropped considerably, the father reported that Terrell refused to eat, but, as before, while in the hospital, he eagerly took nourishment with excellent and prompt weight gain.
Unexplained bruising and marks on the child's feet were observed on certain of the St. Francis' admissions and were reported to DCYS.[1] During these early years of the child's life, the family received numerous supportive services, primarily because of the demanding care responsibilities incident to Terrell D.'s medical condition; these services included VNA, physical therapy, occupational therapy, social work, parent-aide, and homemaker services.[2]
In October 1990, Terrell's pediatrician stated in an affidavit, the following:
 "Tammy G. and Bobby D. do demonstrate affection in caring for Terrell. However, they appear to have intellectual ability which limits their capability to observe and respond appropriately to his complex needs. In addition, concerns have arisen that his parents do not provide sufficient CT Page 7735 fluids to the child on some occasions. Despite all the efforts of the health care and social service systems to support the limited capabilities of the parents, this child is not receiving the care that he should . . . I recommend that Terrell should be placed in foster placement where his medical, nutritional, and emotional needs can be attended to in a consistent and continuous manner."
On October 10, 1990, DCYS obtained an OTC and the child was placed in the Valen foster home in Cheshire where he has remained to date.[3] The neglect/uncared for petition was filed with the OTC (10/10/90), the latter having been confirmed on October 17, 1990. As stated, the child was adjudicated uncared for (special needs) on November 20, and committed to the Department for eighteen months on December 11, 1990. Expectations were established by the court and both parents signed, with their respective attorneys, the CIP agreement form; the expectations included: cooperate with DCYS, keep all appointments set by or with DCYS, keep the agency informed of whereabouts, and visit with the child as often as DCYS permits. The parents have not complied with the court imposed expectations. Since the date of commitment (12/11/90), respondent/father has visited the child only once, that visitation taking place on April 2, 1991; he has not seen the child since that date, and has never requested visitation.[4] The parents have not maintained contact with DCYS, and have been whereabouts unknown for extended periods. On or about August 28, 1991, the Department was informed that respondent/father had left Tammy G. and, since that date, he has not been heard from.[5]
Neither parent, at any time, offered any plan for Terrell D., and neither attended administrative reviews, scheduled with mail notices, concerning this child. As stated, respondent/father has seen the child only once since December 11, 1990, he has not visited Terrell since April 2, 1991, there have been no calls to the foster home regarding the child, father has never called DCYS to arrange any further visitation, and his whereabouts have been unknown since August 1991.
Information in the court file regarding Tammy G.'s background indicates, generally, the following. She was born on November 19, 1967 in Hartford, the third of seven children. Due to parental problems, Tammy G. was raised for several years by her foster mother, Mrs. Maude K. Respondent/mother was assessed as slow and mildly retarded, was in a special education program in the city school system, and progressed through three years at the Weaver High School. Her first child, born in 1986, is being raised by the paternal grandmother under a transfer of guardianship. CT Page 7736 Tammy G. is the mother of a younger child, Michael D., date of birth August 3, 1990.
Information in the court file regarding respondent/father's background indicates, generally, the following. Bobby D. was born on May 3, 1964 in Hartford; he was raised by his mother and stepfather and has two brothers and a sister. He moved back and forth over the years between Hartford and Philadelphia, and is a graduate of South Philadelphia High School. While residing with Tammy G., he worked at various menial types of jobs, with apparently a rather sporadic employment history.
As indicated aforesaid, the child, Terrell D. remains at the Valen special needs foster home. The attorney for the child has reported to the court, at time of trial, that in visiting the child it was observed that Terrell could not talk, the child did try to reach out, and he seemed very well cared for. Terrell has been placed in a custom fabricated lumbar hip-knee-ankle-foot abduction orthosis for as long as seven hours a day. With the support of that implement, the child is enabled to sit up with proper head and neck support, and thereby properly demonstrates use of arms and legs. While so sitting up, Terrell is able to experience his surroundings more fully, rather than being restricted entirely to a bed. It is reported that major activities for the child consist of physical therapy, and listening to music which Terrell loves so very much.
Terrell D. is now four and one-half years of age and has been residing, continuously, in the Valen specialized foster home since October 10, 1990. The child's demanding needs are being very adequately attended to and the child has progressed very well both physically and emotionally. The DCYS plan is for the provision of permanency and certainty through adoption; the foster parent(s) are willing and desirous of adopting Terrell D.
Adjudication
General Statutes Section 17a-112(b) delineates the alternative grounds for termination of parental rights. In order to grant a petition to terminate, the court must determine that an alleged statutory ground has been established by "clear and convincing" evidence; such degree of proof is constitutionally mandated. As stated, this TPR petition was filed March 24, 1992.
a) Respondent/Mother: Consent CT Page 7737
The court finds that respondent/mother executed the written consent to terminate her parental rights to Terrell D. freely, intelligently, knowingly, and voluntarily, with a full understanding of the consequences thereof, and after the effective advice and assistance of counsel.
Section 17a-112(b) states, in pertinent part: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of [her] parental rights with respect to such child . . ."
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established the consensual ground for termination, as alleged, under Section 17-112(b).
b) Respondent/Father: Abandonment
Respondent/father has not seen or visited the child since April 2, 1991; he has not visited the child (or made any significant effort to do so), and the file indicates that he has not telephoned, written, or communicated with the child since that date. The father's whereabouts have remained unknown, and he has not appeared for these legal proceedings.
General Statutes Section 17-112(b)(1) reads: "The superior court upon notice and hearing may grant . . . [a termination petition] if it finds, upon clear and convincing evidence, that termination is in the best interests of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . [t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . ."
Respondent/father has not maintained a reasonable degree of interest, concern, or responsibility regarding Terrell D.'s well-being; on the evidence, the father has had virtually no involvement whatsoever in the child's life for a protracted period exceeding one year. Unlike the common-law principle of abandonment applicable under the neglect provision of General Statutes Section 46b-120, the standard respecting statutory abandonment under Section 17a-112(b)(1) is "not whether the parents have shown some interest in their children"; rather "[c]ommon CT Page 7738 sense dictates that the parent's obligations-toward . . . [a] child go further than a minimal interest." (Emphasis is original). In re Rayna M., 13 Conn. App. 23, 37 (1987).
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established abandonment as a statutory ground for the termination of the parental rights of Bobby D. to the child, Terrell D.
e) Respondent/father: Failure to Rehabilitate
Terrell D. was committed as an uncared for/special needs child on December 11, 1990; the parents signed, with their attorneys, the written agreement setting forth the court expectations: keep all appointments by or with DCYS, keep whereabouts known to DCYS, and visit with the child. Respondent/father has not visited regularly with the child and has not kept the agency informed of his whereabouts.
General Statutes Section 17a-112(b)(2) provides, as follows: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that termination is in the best interests of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a reasonable position in the life of the child . . ." Terrell D. is a four and one-half year old child with extreme specialized needs who has been in placement since October 10, 1990. Respondent/father has visited the child just once since December 11, 1990 (date of commitment) and his whereabouts have been unknown since August, 1991; the father has made no significant effort relative to a reunification. In the court's view, based on what has taken place during the extended period the child has been placed, and considering the child's age and very demanding needs, there is virtually nothing to encourage any belief that within a reasonable time Bobby D. could assume a responsible position in the life of Terrell D.
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established as a statutory ground for termination that Bobby D. is the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding CT Page 7739 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a: reasonable time, considering the age and needs of this child, he could assume a responsible position in the life of the child.
 c) Respondent/Father: No Ongoing Parent-Child Relationship
Terrell D. was born February 24, 1988; he resided with his parents until October 10, 1990 (to age 2 years, 8 months). With the aid of numerous supportive services, the parents marginally cared for the child until he was removed to specialized foster placement under the OTC. The child is mentally retarded with extensive specialized needs which were not met in the home of his biological parents; since October 10, 1990, the child has received exceptionally skilled attention in the foster home, and has developed a strong attachment to his caretaker(s).
General Statutes Section 17a-112(b)(4) provides, as follows: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." The absence of a parent-child relationship involves a situation where the child has never known his parent so that no relationship ever developed, or where the child has clearly lost that relationship so that despite its existence, it now has been completely displaced; our Supreme Court has stated: "`[i]n either case the ultimate question is whether the child has no present memories or feelings for the natural parent.'" In re Shannon S., 41 Conn. Sup. 145, 158 (1989). A troubled relationship between the parent and child is not a basis for termination of parental rights; In re Juvenile Appeal Anonymous), 177 Conn. supra at p. 671; In Re Juvenile Appeal (84-6), 2 Conn. App. 705, 708-09 (1984); however, in applying the statute, "common sense" is to be utilized and "bizarre results" are to be avoided. In re Juvenile Appeal (84-6), supra at p. 709. Accordingly, the feelings of the child for the natural parent means feelings of a positive nature. In re James T., 9 Conn. App. 608, 616 (1987), CT Page 7740 In re Juvenile Appeal (84-6), supra at p. 709; In re Shannon S., supra at p. 159. Terrell D. was very young while residing with his parents; however, for the first year of his life, the parents did provide, albeit quite marginally (if not inadequately), for the day-to-day needs of this child, and some parent-child relationship undoubtedly developed. There is nothing to indicate that the child has memories of his natural father and, as stated, the father has only seen the child once since the December 1990 commitment. All of the day-to-day highly specialized needs of the child have been met by the foster caretakers since early October 1990, and the evidence establishes a strong relationship between Terrell D. and the foster mother. To the extent that any ongoing parent-child relationship may have existed with respect to the biological parents, that relationship was completely displaced as a result of the relationship which developed between the child and the specialized foster parent. On the evidence, and applying the required standard of proof, the court finds no ongoing parent-child relationship between Terrell D. and respondent/father, Bobby D.
Terrell D. has been in foster placement since October 10, 1990; respondent/father did not appear for the termination proceedings, has remained whereabouts unknown, and during the period of the commitment has not worked towards reunification. The foster parent has been the child's continuous caretaker and is desirous of adopting this very special child; permanency, certainty, love, devotion, consistency and, highly skilled care are in Terrell D.'s best interest. During the commitment, respondent/father has made no progress toward reunification. The court finds that to allow further time for the establishment or reestablishment of the parent-child relationship, as statutorily defined, would be detrimental to the best interests of Terrell D.
It is hereby found, applying a clear and convincing standard of proof, that petitioner has established that there exists no ongoing parent-child relationship between Bobby D. and Terrell D., which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interests of the child.
Disposition
General Statutes Section 17a-112(b) permits the court to grant a petition to terminate parental rights only upon a determination, based on clear and convincing proof, that to CT Page 7741 terminate would be in the best interests of the child. Additionally, it is statutorily required that the court consider the six factors set forth in Section 17a-112(d). Evidence was last received in this case on June 4, 1992.
Terrell D. has made exceptionally fine progress in the Valen specialized foster home. Respondent/mother has acknowledged that she is unable to meet the very trying demands of this unfortunate child's specialized care, and has made the very difficult decision to consent to the termination of her parental rights. Respondent/father has shown no real interest in the child since the date of the commitment to DCYS; he has visited the child only once since December 1990 and has had no contact with the child in well over one year. The father's whereabouts have remained unknown, he has not cooperated with DCYS, and he has never presented any plan for the child. Terrell D. is approaching four and one-half years of age. Under the totality of the circumstances, a permanent, loving, devoted, stable home, where the child's very demanding specialized needs can be lovingly, skillfully, and consistently attended to, is in Terrell D.'s best interests; such can be appropriately realized through a termination of parental rights, thereby freeing the child for adoption, which is the DCYS plan. It is hereby found, applying a clear and convincing evidence standard, that termination of the parental rights to Terrell D. is in the child's best interests.
With respect to respondent/father, the court has carefully considered the six statutory factors set forth in Section 17a-112(d)(1) through (6), and hereby finds, on clear and convincing evidence, the following:
(1) Initially, DCYS, undertook to work with respondent/father toward reunification. The Department offered to facilitate visitation by providing transportation, or, by reimbursement for travel if the parent wished to make his own arrangements. Nevertheless, respondent/father visited only once since December, 1990. Respondent/father's whereabouts have remained unknown since August, 1991; thus, from that time forward, no services could be provided relative to his reunification with Terrell D.
(2) Expectations were set forth in the written agreement signed by respondent/father. DCYS offered transportation, or reimbursement, for purposes of visitation, and both DCYS and the specialized foster parent took steps to facilitate visitation. Respondent/father did not comply with any of the court established expectations as contained in the written agreement. CT Page 7742
(3) The evidence did not establish any feelings or emotional ties on the part of the child with respect to respondent/father. The evidence and documentation indicates an attachment to the specialized foster parent who has cared for the child, and met his many needs, on a day-to-day basis since October 10, 1990.
(4) Terrell D. was born February 24, 1988; as of the conclusion of the evidence, the child was approximately four years and four months of age. The extended period of time he has been in foster placement, and his very great specialized needs, dictate that permanency, certainty, and skilled, consistent care are clearly in his best interests.
(5) Respondent/father has visited Terrell D. only once since December 1990, although DCYS has offered transportation, or reimbursement for travel. Respondent/father has not cooperated with DCYS and his whereabouts have been unknown since August, 1991. Bobby D. has made no effort to adjust his circumstances, conduct, and conditions to make it in the best interests of Terrell D. to return to the father's home in the foreseeable future. Respondent/father has not maintained regular contact and communication with the foster parent(s), the guardian, or other custodian of the child.
(6) There is no evidence that respondent/father has been prevented in any way, or by anyone, or by any circumstance, from maintaining a meaningful relationship with Terrell D.
Petitioner has met its burden of proof by clear and convincing evidence; the best interest of Terrell D. will be served by freeing him for adoption, and by the provision of a permanent, loving, and caring home.
With respect to respondent/father, it is found, by clear and convincing evidence, that over an extended period of time which is not less than one year, statutory grounds have existed for the termination of his parental rights under General Statutes Section 17a-112(b)(1), (2) and (4). With respect to respondent/mother, it is found, by clear and convincing evidence, that the consensual ground for termination of parental rights has been established, as alleged, under General Statutes Section 17-112(b). It is further found, by clear and convincing evidence, that termination of parental rights is in the best interests of Terrell D. CT Page 7743
The petition to terminate the parental rights of Tammy G. and Bobby D. to the child Terrell D. is hereby Granted; and, the Department of Children and Youth Services is appointed Statutory Parent for the said Terrell D.
In accordance with General Statutes Section 17a-112(i), a case plan report shall be submitted to this court by the Commissioner within ninety (90) days, and thereafter as the court may require, but no less often than annually.
Mulcahy, J.