[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
FINDINGS RE: PETITION FOR TERMINATION OF PARENTAL RIGHTS
The child's date of birth is April 29, 1990; she was committed to the care and custody of the Commissioner of the Department of Children and Youth Services (DCYS) as a neglected child (abandoned) on March 5, 1991.[1] The mother of the child is Tammy W., d/o/b January 7, 1964.
The instant petition to terminate parental rights was filed September 20, 1991. The petition alleges statutory grounds for termination under General Statutes Section 17a-112 (formerly Section 17-43a)(b)(1) (Abandonment), (2) (Failure to Rehabilitate), and (4) (No Ongoing Parent-Child Relationship). The petition requests a waiver of the one year statutory requirement pursuant to General Statutes Section 17a-112 (c).
JURISDICTION
Respondent/mother's address is indicated on the termination petition as: Tammy W., c/o Blue Hills Hospital Residential Program, 51 Coventry Street, Hartford, Conn. The plea hearing on the termination petition is shown as scheduled for October 15, 1991 at 11:00 A.M. On October 10, 1991, petitioner filed a motion for order of notice stating that all reasonable efforts to effect in hand service on respondent/mother had failed, and further, that "notice by Certified Mail . . . [was] considered most likely to succeed." Petitioner's motion was granted on CT Page 7942 October 10, a certified mailing of the papers was effected to the Coventry Street residential drug treatment facility, and a signed green receipt was returned to the court. Respondent/mother was present with her attorney at the October 15, 1991 court hearing, pro-forma denials to the allegations of the termination petition were entered, and the case was continued for a pre-trial/case status conference scheduled for November 7, 1991 at 2 P.M.[2]
The court finds that it has jurisdiction to hear and adjudicate the instant petition.
STANDARD OF PROOF
The term "termination of parental rights" is statutorily defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent or parents so that the child is free for adoption except that it shall not affect the right of inheritance of the child or the religious affiliation of the child." General Statutes Section 45a-707 (g). It is a judicial matter of exceptional gravity and sensitivity. Anonymous v. Norton, 168 Conn. 421, 430 (1975). Termination of parental rights is the ultimate interference by the state in the parent/child relationship and, although such judicial action may be required under certain circumstances, the natural rights of the parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651 (1972); In Re Juvenile Appeal (Anonymous), 177 Conn. 648, 671 (1979).
The integrity of the family unit is protected by theNinth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. Stanley v. Illinois, supra. Both the child and the parent(s) have constitutionally protected interests in the integrity of the family. Santosky v. Kramer, 455 U.S. 75
(1982). And, the "rights of parents qua parents to the custody of their children is an important principle that has constitutional dimensions." See: In Re Juvenile Appeal,187 Conn. 431, 435 (1982).
The constitutional guarantee of due process of law requires that the statutory ground(s) for termination of parental rights be established by "clear and convincing evidence, not merely a fair preponderance." Santosky v. Kramer, supra. Accordingly the standard of proof as mandated by Conn. General Statutes Section 17a-112 (b) and Conn. Prac. Bk. 1049 is "clear and convincing" evidence. See: e.g. In Re Juvenile Appeal (84-3),1 Conn. App. 463 (1984). CT Page 7943
Termination of parental rights is in two stages: the adjudication and the disposition. The adjudicatory stage involves the issue of whether the evidence presented established the existence of one or more of the statutory grounds as of the date the petition was filed. In Re Juvenile Appeal (84-AB),192 Conn. 254, 262 (1984); In Re Nicolina T., 9 Conn. App. 598, 602
(1987); In Re Luke G., 40 Conn. Sup. 316, 324 (1985). Only upon establishment of one or more of the statutory grounds may inquiry be made regarding the ultimate best interests of the child. In Re Juvenile Appeal (84-AB), supra at p. 262. However, since Section 17a-112 (b) sets forth the statutory grounds for termination in the disjunctive, one ground only need be established for the granting of the petition. In Re Juvenile Appeal (84-BC), 194 Conn. 252, 258 (1984); In Re Nicolina T., supra.
FACTUAL FINDINGS
Respondent/mother did not appear for trial; her attorney was present and undertook, in the mother's absence, to represent and protect her interests. The evidence and entire documentation before the court established the following facts:
Kirsty W. was born, as stated, on April 29, 1990; on December 4, 1990, DCYS was contacted by a representative of the Hartford Police Crisis Intervention Team who reported that Tammy W. had left the child on December 3, at about 6:00 P.M., with a Ms. Vivian R., stating that she would return for Kirsty in about a half-hour. When mother had not returned the next day, Ms. R., having no diapers, food, etc., for the very young child, reported the incident to the Hartford police, stating that she could no longer care for the child.[3] DCYS was contacted, a ninety-six hour hold was placed on the child, and an OTC was applied for and obtained, which ex parte order was confirmed by the court on December 13, 1990. A neglect petition was filed with the OTC, and, Kirsty W. has been in placement (three separate placements) continuously since December 4, 1990; as stated, the child was committed for the statutory eighteen month period on March 5, 1991 to September 5, 1992.
Tammy W. was born in Jamaica, New York, on January 7, 1964, grew up in Hartford, and attended the Hartford public schools, dropping out of Weaver High School in the tenth grade. In 1981, Tammy W. received her G.E.D. and, thereafter, a business school certificate for Data Entry; her employment record has been sporadic, usually working in various Department stores for brief periods of time, and she has not maintained a particular position for more than one year. Respondent/mother has a long history of psychiatric problems and drug abuse.[4] Besides Kirsty, CT Page 7944 the mother has two other children; Ryan W., d/o/b October 31, 1988; and, Brandy W., d/o/b September 15, 1980. These children are not in the care of Tammy W.; a maternal aunt is guardian of the oldest child, Brandy W.; and, respondent/mother's parental rights to Ryan W. were terminated by judgment of this court, following a default trial, on March 5, 1991.
Kirsty W. (d/o/b 4/29/90) has had, during her short life, several primary caretakers including two aunts, respondent/mother, a neighbor, and two sets of foster parents; it is reported that most of the prior caretakers have, for their own purposes, requested that the child be removed and, therefore, with this child there is clearly a need for permanency and stability. The child is healthy and is on target developmentally; she has tested negative on three occasions for the serious infectious disease which her mother is afflicted. Kirsty was initially placed, back on or about December 6, 1990 (OTC), in a foster home where she remained until February 28, 1991; after that initial placement of about two and one-half months, the child, at respondent/mother's request, was placed in the home of a maternal aunt, Sharon W., where she remained until September 13, 1991 when the aunt advised the Department that she could no longer provide care for Kirsty W. The child was then placed in the Hamilton foster home in East Hartford; this placement was a legal risk adoptive home and Kirsty remains there to date.
It is reported that the child has done wonderfully with her legal risk adoptive family and has bonded significantly to all family members. Kirsty W. has been in foster placement for more than one-half of her young life.
Tammy W., reportedly, was hospitalized at Cedarcrest for depression a few years before the commitment of this child; she has admitted that she did not follow through with the discharge plan. Through the years, respondent/mother has also had a number of admissions to the psychiatric unit at the John Dempsey Hospital. Tammy W. has also participated in numerous residential and out-patient drug treatment programs; according to the evidence, she has never successfully completed any such therapeutic program. Residential drug treatment facilities to which respondent/mother has been admitted inpatient have included the Institute of Living, UConn Health Center, and Blue Hills. Respondent/mother was not in a drug treatment program from the date of Kirsty W.'s commitment to April 26, 1991; on that date she entered a Waterbury program for those afflicted with infectious, terminal illnesses. Tammy W. was discharged from that facility on June 6, 1991 because of non-compliance with the regulations and drug use. From June 6 to August 26, 1991, respondent/mother was not admitted to any drug treatment CT Page 7945 program. During that period, her whereabouts were unknown, but, by mid-September 1991, it appears Tammy W. was in Blue Hills (ninety day program) where she was also in non-compliance with house rules. More recently, she was in the Institute of Living's Substance Abuse Day Treatment Program, but was discharged for irregular attendance. As stated, respondent/mother has not successfully completed any drug treatment program.
Tammy W.'s contact with the Department during the course of this child's commitment has been sporadic. Beginning prior to the date of commitment (3/5/91), but while the child was placed, that is, from February 1991 well into April, 1991 (at which time respondent/mother entered the Waterbury program), Tammy W.'s whereabouts were unknown. And, following the date of commitment, from early July 1991 to mid-September 1991, the respondent/mother's whereabouts again remained unknown. More recently, respondent/mother was reported to be living at a shelter in Hartford.
With respect to visitation, respondent/mother last visited the child sometime during the week of July 1, 1991. During the period from February 28, 1991 to April 26, 1991, while the child was placed in the maternal aunt's home, the respondent/mother had open visitation, but nevertheless, did not visit with Kirsty W. at all. From late April through May 1991, respondent/mother had, in all, three visits with Kirsty, the aunt transporting the child twice, and the DCYS worker once, to Waterbury for visitation. During June 1991, respondent/mother resided with the child's babysitter, another maternal aunt, Carla W., and, thus, saw the child on-occasion during the month of June 1991. As stated, the respondent/mother last saw the child on a date during the first week of July 1991.[5]
Since the child's commitment, respondent/mother has not had, or been able to maintain, any home to which she could take, care for, or raise this child (or any of her other children); the unfortunate circumstances of drug use and HIV illness have resulted in Tammy W.'s being in and out of hospitals, drug treatment programs, shelters, as well as temporary stays with friends, or her two sisters (the maternal aunts). The evidence indicated that respondent/mother has, generally, over the entire period, expressed ambivalence with respect to assuming the caretaking responsibilities of her young daughter, Kirsty W. The default trial on the TPR petition was deferred several times on the representation that respondent/mother wished to, and would, consent to a termination of her parental rights to this child; understandably, consenting to termination of maternal rights would be a very traumatic and difficult ordeal for this or any parent, and it seems that Tammy W. has (quite CT Page 7946 understandably) simply chosen not to come to court for that purpose.[6]
The Department's plan for Kirsty W. is permanency and stability through the adoption process. According to the evidence, the East Hartford foster parents have represented that they very much wish to, and will, adopt this two year old child.
ADJUDICATION
General Statutes Section 17a-112 (b) delineates the alternative grounds for termination of parental rights. In order to grant a petition to terminate, the court must determine that an alleged statutory ground has been established by "clear and convincing" evidence; such degree of proof is constitutionally mandated. As stated, this TPR petition was filed September 20, 1991.
a) Respondent/Mother: Abandonment.
General Statutes Section 17-112 (b)(1) reads: "The superior court upon notice and hearing may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that termination is in the best interests of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . [t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ."
This child has been in placement since December 6, 1990. Respondent/mother's visitation with the child has been exceedingly sporadic; there have been prolonged periods where her whereabouts have been unknown and she has not contacted the Department regarding the child or to arrange visitation. Tammy W. has continued to use drugs, and she has not successfully completed any of the many substance abuse programs to which she has been admitted. In the court's view, respondent/mother has not maintained (even considering her tragic circumstances) a reasonable degree of interest, concern or responsibility as to the welfare of this little girl. Unlike the common-law principle of abandonment, applicable under the neglect provision of General Statutes Section 46b-120, the standard respecting statutory abandonment under Section 17a-112 (b)(1) is "not whether the parents have shown some interest in their children"; rather "[c]ommon sense dictates that the parent's obligations toward . . . [a] child go further than a minimal interest." (Emphasis is original). In re Rayna M., 13 Conn. App. 23, 37
(1987). CT Page 7947
The court hereby-finds, applying a clear and convincing standard of proof, that petitioner has established abandonment as a statutory ground for the termination of the parental rights of Tammy W. to the child, Kirsty, W.
b. Respondent/Mother: Failure to Rehabilitate.
General Statutes Section 17a-112 (b)(2) provides, as follows: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that termination is in the best interest of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child.
Following the placement of the child under the OTC, the worker explained to respondent/mother what had to be done to work toward a parent/child reunification; the mother understood what had to be done (visitation, drug therapy, remain in contact with DCYS, etc.), she had been through the procedure before with an older child, and she acknowledged to the DCYS worker that she had a serious drug problem and would need help. Throughout the course of this placement, however, mother did not visit regularly with the child, she did not keep in contact with DCYS for extended periods, and she has been unable to successfully complete any drug therapy program. While respondent/mother's circumstances are certainly unfortunate, the evidence presented simply does not reflect any significant progress that has been made towards a reunification. Considering the extended period of time Kirsty W. has been in foster placement, what has transpired thus far during said placement, and considering the little girl's age and needs, it is the court's view that there is very little, if anything, to encourage any belief that within a reasonable time Tammy W. could assume a responsible position in Kirsty W.'s life.
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established as a statutory ground for termination that Tammy W. is the parent of child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible CT Page 7948 position in the life of the child.
c. Respondent/Mother: No Ongoing Parent-Child Relationship.
General Statutes Section 17a-121 (b)(4) provides the following: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of the parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interests of the child." The statute involves the situation where a child has never known the parent and no such relationship ever developed, or where the child has clearly lost that relationship so that despite its existence, it now has been completely displaced. See: In re Juvenile Appeal (Anonymous), 181 Conn. 638, 645-46
(1980); In re Shannon S., 41 Conn. Sup. 145, 158 (1989). A troubled relationship between the parent and child is not a basis for a termination of parental rights; however, in applying the statute, "common sense" is to be utilized and "bizarre results" are to be avoided. In re Juvenile Appeal (84-6),2 Conn. App. 705, 708-09 (1984).
Kirsty W. has been in continuous placement since December 6, 1990; that is, since she was less than eight months old. Respondent/mother has had very limited visitation with the child and has not cared for the child, on a day to day basis, while the child was placed. As stated, during this prolonged placement of Kirsty W., there has been virtually no, or at best, very limited, progress toward a reunification. The respondent/mother has not met (since the child was approximately eight months of age) "on a day to day basis, the physical, emotional, moral and education needs of the child." Given the child's age when removed from parental care to foster placement, and the very limited visitation which has occurred since December 1990, the child would not have memories of respondent/mother as her caretaker.[7] The evidence indicated that the child is attached to the present foster parents; to the extent that any parent/child relationship might have existed based on the mother's marginal care of the child during the first eight months of Kirsty's life, that relationship has been displaced. On the evidence, the court finds no ongoing parent-child relationship under Section 17a-112 (b)(4). CT Page 7949
Kirsty W. has been in placement for a protracted period of time. The child has been in multiple foster homes, including the DCYS at risk adoptive home. Respondent/mother has not visited the child regularly, her whereabouts have remained unknown for long periods during the placement, and she has not successfully completed any drug abuse program; as stated, there has been no real progress towards a reunification. A permanent, stable, nurturing home environment is clearly in Kirsty W.'s best interests. The court finds that to allow further time for the establishment or reestablishment of the parent-child relationship, as statutorily defined, would be detrimental to the best interests of Kirsty W.
It is hereby found, applying a clear and convincing standard of proof, that petitioner has established that there exists no ongoing parent-child relationship between Tammy W. and Kirsty W., which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interests of the child.
STATUTORY ONE YEAR REQUIREMENT
Section 17a-112 (b) permits the court to terminate parental rights upon clear and convincing proof of one or more of the four grounds set forth therein, provided, that the termination is in the best interests of the child, and, that the circumstances constituting the ground for termination have existed "over an extended period of time, which, except as provided in subsection (c) . . . shall not be less than one year." Subsection (c) permits the court to waive the one year requirement if, from the totality of the circumstances surrounding the child, a waiver is necessary to promote the best interests of the child.
Kirsty W. has been in placement since December 6, 1990. She was committed to the Department on March 15, 1991. The petition to terminate parental rights was filed on September 19, 1991.
During the period of placement, this child has been in three different foster homes. The child needs and deserves stability and permanency. The court has considered respondent/mother's tragic illness and drug addiction; against the mother's dreadful circumstance must be weighed the interests of this little girl. In this case the respondent/mother has not regularly visited Kirsty, she has not communicated with DCYS concerning the child for long periods of time, she has repeatedly CT Page 7950 been unsuccessful in addressing her long standing drug abuse problem, and, as stated heretofore, the mother has been unable to effect any real progress toward reunification. The interest of the child outweigh, in the court's view, the mitigating aspects of respondent/mother's unfortunate circumstances. At this point, the permanent placement of the child in a stable, loving, and nurturing home is entirely consistent with Kirsty W.'s best interests, and such permanent placement, considering what has taken place thus far, and the absence of any real progress towards reunification, should not be further delayed.
It is hereby found that petitioner has established, by clear and convincing evidence, that from the totality of the circumstances surrounding this child, a waiver of the one-year requirement contained in Section 17a-112 (b) is necessary to promote the best interests of the child.
DISPOSITION
Aside from the issue of waiver of the one-year requirement discussed in the preceding section of this opinion, Section17a-112 (b) provides that the court may grant a petition to terminate only when it finds, on the basis of clear and convincing proof, that to terminate parental rights would be in the best interests of the child. And, prior to a determination on disposition, the court is statutorily required to consider the six factors set forth in General Statutes Section17a-112 (b). The date on which evidence was last received on these petitions was May 8, 1992.
As stated heretofore, the evidence, in my view, establishes, clearly and convincingly, that it is in the best interest of Kirsty W. to free her for adoption and thereby provide permanency, stability, and certainty in the child's home and family situation. Respondent/mother's visitation has been minimal or, at best, extremely irregular, there have been periods of virtually no contact with the Department regarding the child, the mother remains homeless, her addiction to drugs continues without success in therapy, and, as stated, the situation has remained basically the same, with no significant movement in the direction of reunification. It does not serve Kirsty W.'s best interests to remain indefinitely in foster placement (or in this case, multiple foster placements); rather, the child's best interests are to be properly served by permanency; that is, a secure, stable, nurturing permanent home. That is DCYS' plan, the child has adjusted well in, and is very much attached to, the present foster home, and the foster parents are most desirous of adopting; in the best interests of the child, she should be freed for adoption through a termination of the respondent/mother's parental rights. CT Page 7951
The court has considered, carefully, the factors enumerated in Section 17a-112 (d)(1) through (6), and hereby finds (applying a clear and convincing standard), the following:
(1) During the duration of the placement, respondent/mother was in drug treatment programs, a special care facility, or was whereabouts unknown. Respondent/mother did not successfully complete the numerous in-patient and residential drug programs to which she was admitted; and, she was discharged from various facilities for non-compliance with rules and drug use. Because of respondent/mother's unavailability, it was difficult to put other services in place.
(2) Respondent/mother has not appeared in court at most of the court hearings regarding Kirsty W. On certain occasions, her whereabouts were unknown and she could not be contacted. It does not appear that there were court orders entered obligating either the agency or respondent/mother.
(3) The child was placed on December 4, 1990, at approximately age eight months. During placement, there has been very limited visitation by respondent/mother and the child has been continuously out of her care since December 4, 1990. Thus, the evidence does not indicate feelings or emotional ties on the part of the child toward the mother. The transition into the at risk adoptive home on September 13, 1991 proceeded quite well after considerable pre-placement preparation and almost two months of visitation. The child has adjusted very well in the foster home and has become attached emotionally to the entire prospective adoptive family.
(4) Kirsty W. was born April 29, 1990; she is two years, four months of age. Given the child's age, she is certainly adoptable, and freeing the child for that purpose is clearly in her best interests.
(5) Respondent/mother has not maintained continuing contact with DCYS regarding this child, has not visited regularly with Kirsty, and has not successfully addressed her long standing drug addition. For protracted periods, Tammy W.'s whereabouts have remained unknown; for a number of such periods, she has been, and remains, homeless. Respondent/mother has not made successful efforts to adjust her circumstances, conduct, and conditions to make it in the child's best interest to return to her care in the foreseeable future; however, her health and psychiatric problems cannot be overlooked in this regard, and the court has considered and weighed such unfortunate circumstances in assessing whether termination is in the best interests of the child. CT Page 7952
(6) Respondent/mother has not been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of any other person, or by economic circumstance.
The petitioner has met its burden of proof by clear and convincing evidence; the best interest of Kirsty W. will be served by freeing the child for adoption, and by provision of a nurturing, stable, loving, secure, permanent home.
It is found, by clear and convincing evidence, that termination of parental rights is in the best interests of Kirsty W.; and, that with respect to respondent/mother, Tammy W., one or more statutory grounds exist for the termination of her parental rights. Having found petitioner to have established, by clear and convincing evidence, that from the totality of the circumstances surrounding Kirsty W., a waiver of the Section 17a-112 (b) one year requirement is necessary to promote the child's best interest, said one year requirement is hereby waived.
The petition to terminate the parental rights of Tammy W. to the child, Kirsty W., is hereby Granted; and the Department of Children and Youth Services is appointed Statutory Parent for the said Kirsty W.
In accordance with General Statutes Section 17a-112 (i), the written progress report (case plan report) shall be submitted to this court by the Commissioner within ninety (90) days, and thereafter as the court may require, but no less often than annually.
Mulcahy, J.