## IN RE NICOLINA T. ET AL.*
### (4446)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued December 2, 1986—decision released February 10, 1987

*Barbara J. Ruhe,* with whom, on the brief, was *Jewel A. Gutman,* for the appellant (respondent mother).

*Judith Merrill Earl,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Robert W. Garvey,* assistant attorney general, and *Emily Resnik,* law student intern, for the appellee (commissioner of children and youth services).

*Denise Magnoli McNair* filed a brief for the minor children.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

DuPont, C. J. In this action, coterminous petitions were filed by the commissioner of the department of children and youth services (DCYS) seeking the termination of the parental rights of the parents of two minor children pursuant to General Statutes § 17-43a.[1] The trial court granted the petitions and the respondent mother appeals from that judgment.[2] The respondent claims that the trial court erred in ordering such termination because: (1) DCYS failed to prove by clear and convincing evidence that the termination was in the children's best interests; and (2) such termination denied the respondent her rights to equal protection of the laws guaranteed under the Connecticut constitution.[3]

---

[1] Although both the trial court and the respondent refer to the applicable statute in this case as General Statutes § 45-61f (f), the record reflects that the petition for termination of parental rights was actually brought pursuant to General Statutes § 17-43a. Section 17-43a (b) provides for the filing of a petition for termination of parental rights in the Superior Court, and enables the Superior Court to grant such petition. Section 45-61f, on the other hand, provides for the filing of such petition in the Probate Court. Both statutes use the same criteria for granting such termination.

Section 17-43a (b) provides in pertinent part that "[t]he superior court upon hearing and notice, as provided in [section] . . . 45-61f, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time . . . (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being . . . or (4) there is no ongoing parent-child relationship . . . . "

[2] The respondent father did not appear at the hearing and did not appeal from the judgment terminating his parental rights. The word "respondent" as used in this decision refers to the mother. The attorney representing the minor children in this appeal concurs with the position of DCYS.

[3] On appeal, the respondent raised six additional claims of error. Four of these issues were not included in the respondent's preliminary state-

The respondent is the thirty-year old mother of two minor children, Nicolina and Ramiro T. The respondent has been diagnosed as suffering from chronic paranoid schizophrenia and an epileptic disorder, which require medicine and treatment. As a result of her illness, the respondent has periodically been committed to various psychiatric facilities for treatment.

At the time of the hearing, Nicolina was ten and Ramiro was eight years of age. Throughout their young lives, they have been voluntarily committed by the respondent to the care of DCYS. Numerous placements of the children in various foster homes began in 1978 when Nicolina was three years old and Ramiro was one. These placements have lasted for periods ranging from a few days to a year.

The respondent was living in a structured transitional group home at the time of the hearing, and her chil-

ment of issues as required by Practice Book § 3012 (a) (now § 4013 [a]). Although our appellate courts have in the past declined to address issues not properly presented to the court; *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 617, 495 A.2d 1006 (1985); revised Practice Book § 4013 effective October 1, 1986, and made applicable to pending appeals by Practice Book § 4189, does not preclude an appellant from raising such issues in a brief unless the opposing party is prejudiced thereby. *State* v. *McIver,* 201 Conn. 559, 568 n.3, 518 A.2d 1368 (1986). Although DCYS does not assert that it has been prejudiced by the failure of the respondent to include such issues in her preliminary statement of issues, we find that they nevertheless evade appellate review for other reasons. Four of the respondent's issues were not briefed properly, as counsel has not researched the issues or formulated any legal arguments thereunder. We therefore deem these issues to be abandoned. *McGaffin* v. *Roberts,* 193 Conn. 393, 399 n.6, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *In re Juvenile Appeal (85-3),* 3 Conn. App. 194, 197–98, 485 A.2d 1369 (1985); *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 682 n.2, 474 A.2d 810 (1984). The remaining two issues were not raised by the respondent at the trial court level. Only in the most exceptional circumstances will an appellate court consider a claim that has not been raised and decided in the trial court. *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 186 n.1, 501 A.2d 745 (1985); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672, 500 A.2d 1324 (1985). The respondent has not shown, nor do we find, any exceptional circumstances to warrant this court's review.

dren have resided in a foster home apart from their mother since 1984. Since then, the respondent has telephoned them twice a week and visited them on a monthly basis, and claims that she would like to provide a home for them in the future.[4]

The petitions filed by DCYS for the termination of the parental rights of both parents with respect to each of the children alleged that the children were neglected in that they were abandoned by their father and were denied proper care and attention by their mother. As grounds for such termination, the petitions specifically alleged that the children "had been denied by reason of act or acts of commission or omission, the care, guidance or control necessary for [their] physical, educational, moral, or emotional well-being." The petitions also alleged that there was "no ongoing parent-child relationship, as defined by law." In granting the petitions and ordering termination of the parental rights of both parents, the trial court found by clear and convincing evidence that the children had been abandoned by their father and that each of the grounds alleged by DCYS in the petitions existed.

In her first claim of error, the respondent alleges that DCYS failed to prove by clear and convincing evidence that the termination of her parental rights was in the best interests of her children. The basis for this claim is that the petitioner failed to prove by clear and convincing evidence that the children had been denied "the care, guidance or control necessary for their physical, educational, moral or emotional well-being," or that there was "no ongoing parent-child relationship" between the children and the respondent. See General Statutes § 17-43a (b).

[4] The present whereabouts of the children's father is unknown. The father made regular child support payments until 1980, after which both payments and visitation have been either sporadic or nonexistent. The father has not seen the children since December, 1982, and his last contact with them was in November, 1983.

Although the respondent asserts that the trial court erred in ordering the termination of her parental rights because DCYS failed to establish by clear and convincing evidence that such termination was in the children's best interests, her argument is directed to the failure of DCYS to establish by clear and convincing evidence the statutory grounds for termination alleged in its petition. The statutory requirement of a finding that termination was in the best interests of the children is separate and distinct from the requirement of a finding that one of the statutory grounds for such termination existed. See *In re Juvenile Appeal (84–BC),* 194 Conn. 252, 479 A.2d 1204 (1984).

The requirements for the termination of parental rights pursuant to General Statutes § 17-43a (b) are two-fold. The trial court must find by clear and convincing evidence that such termination was in the best interests of the child, and that one or more of the statutory grounds for termination exists. See *In re Migdalia M.,* 6 Conn. App. 194, 208, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). In order to satisfy the statutory requirements for termination of parental rights, DCYS need only prove by clear and convincing evidence *one* of the statutory grounds provided in § 17-43a (b). *In re Juvenile Appeal (84–BC),* supra, 258; *In re Migdalia M.,* supra. Thus, if but one of the statutory grounds alleged in the petition in the present case was proven by clear and convincing evidence, and if, by the same standard, termination was in the best interests of the children, the order of termination must stand.

The detailed and well reasoned memorandum of decision of the trial court set out the facts found and the evidence introduced during the three days of the hearing. Testimony of various witnesses indicated that both children have been exposed to various incidents relating to the manifestations of the respondent's mental

illness. Erratic and violent behavior of the mother was documented and testified to, as well as its effect on the children. Testimony indicated that both children had been subjected to physical abuse by the respondent. Moreover, Nicolina had reported at least two incidents of sexual abuse while in her mother's care. One incident involved her mother's boyfriend, and the other involved a babysitter in whose care Nicolina was entrusted. Despite the respondent's self-destructive behavior, she has refused treatment and medication in the past. As a result, both children have stated that they cannot predict when or where their mother's erratic behavior will erupt. Moreover, both children indicated that they fear their mother and prefer not to return to her care.

Expert testimony was introduced by a clinical psychologist who had evaluated both children and submitted a detailed report on his findings. He testified that the respondent's behavior had a powerful and devastating effect on both children's social and emotional development. Nicolina was found to have a low self-esteem and emotional blockage indicative of sexual abuse. Ramiro displayed a higher degree of emotional disturbance as well as a potential visual-motor and learning problem which will require close monitoring and attention in the future. The psychologist concluded that a return of the children to the respondent would entail a significant risk of physical abuse, and would expose Nicolina to repeated sexual abuse. Moreover, he testified that such a return would expose both children to further social and emotional damage, and concluded that both children were in need of mental health attention and treatment which they had not received from their mother because of her inability to provide them with the consistency of care which they required.

Another child psychologist also evaluated both children and testified that they needed a stable and con-

sistent environment. His opinion was that the emotional and psychological effect of returning them to their mother would be "very upsetting and potentially damaging to them," and that it would be in both children's best interests not to return to the respondent.

Testimony of a neuropsychologist was also introduced which revealed that the respondent had difficulties in everyday functioning and could not face new or unpredictable situations. The testimony of two clinical social workers who had worked with the family also indicated that the children had special needs which overwhelmed the mother. A DCYS social worker testified that the children needed a permanent, stable family with consistent and appropriate care. She further indicated that the children were living in a foster home which provided them with such care. At the time of the hearing, both the children and the foster family were in favor of adoption.

The respondent admitted at the hearing that she was not then in a position to take the children back with her. She further indicated that she had no idea how long she would be unable to take the children, or how long she would continue to reside at the transitional living facility.

The respondent disputes much of the testimony presented at the hearing, and alleges that such testimony contained many uncertainties and discrepancies. Moreover, the respondent maintains that no corroborating testimony was presented by the petitioner regarding the allegation that the children were in significant danger of physical abuse. Finally, the respondent challenges the credibility of the expert witnesses, alleging that "they had never seen the children with their mother, or had met the mother."

These claims relate to the weight to be given to the testimony, and are not appropriately directed to an

appellate court. See *In re Juvenile Appeal (83–BC)*, 189 Conn. 66, 77, 454 A.2d 1262 (1983); *In re Rebecca W.*, 8 Conn. App. 92, 95, 510 A.2d 1017 (1986). It is the trial court which has the benefit of having all the parties before it, and is thus in the best position to analyze the testimony and evidence and reach an ultimate conclusion regarding whether the statutory criteria for termination have been met. *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 438 A.2d 801 (1981).

In this case, there was a plenitude of expert testimony in support of the conclusions reached by the trial court. The psychological testimony from professionals is rightly accorded great weight in termination proceedings. *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 667, 420 A.2d 875 (1979). We have previously recognized that the testimony of child psychologists is a factor which may properly be considered by the trial court when determining whether a parent's mental deficiency interferes with the parenting functions necessary to deal effectively with a child. *In re David E.*, 4 Conn. App. 653, 657, 496 A.2d 229 (1985).

Termination has been consistently recognized as being in the best interest of the child when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care. *In re Theresa S.*, 196 Conn. 18, 29–30, 491 A.2d 355 (1985); *In re David E.*, supra.

The trial court concluded that the children had been denied the care, guidance or control necessary for their physical, educational, moral or emotional well being, and that termination was in the children's best interests. Our thorough review of the entire trial record indicates that the findings of the trial court are supported by clear and convincing evidence.[5]

[5] Our conclusion that one of the statutory grounds provided in General Statutes § 17-43a (b) (3) was supported by clear and convincing evidence

The second issue raised by the respondent is that the trial court erred in ordering termination of her parental rights because such termination deprived her of equal protection of the laws guaranteed under article XXI of the amendments to the Connecticut constitution, which forbids discrimination based upon a person's mental condition.[6] As part of this claim, the respondent alleges that her parental rights have been terminated solely because of her mental condition, and that, in terminating her parental rights, the trial court failed to consider the guarantees of the equal protection clause of the Connecticut constitution.

The guaranty of equal protection of the laws ensures that the laws apply alike to all in the same situation, or that similar treatment is afforded to those in similar circumstances. The trial court's decision to terminate the respondent's parental rights was made pursuant to the statutory requirements of General Statutes § 17-43a (b), which makes no distinction between mentally ill and other persons.[7] As such, the statutory

---

makes it unnecessary to consider whether there was clear and convincing evidence to support the allegation that 'there was no ongoing parent-child relationship" between the respondent and her children. See *In re Juvenile Appeal (83–BC)*, 189 Conn. 66, 77, 454 A.2d 1262 (1983); *In re David E.*, 4 Conn. App. 653, 496 A.2d 229 (1985).

[6] The equal protection clause of the Connecticut constitution was amended by article XXI of the amendments in 1984 to provide: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[7] General Statutes § 17-43a was amended in 1984 to delete mental deficiency as grounds for termination of parental rights. Prior to the 1984 amendment, § 17-43a (a) (3) provided that the court could grant a petition for termination of parental rights upon a finding "that over an extended period of time . . . the parents, by reason of continuing physical or mental deficiency have, and for such period of time as will be detrimental to the best interest of the child, will be unable to provide him with the care, guidance and control necessary to his physical, educational, moral and emotional well-being . . . ." In construing this statute, our Supreme Court

criteria applies with equal force to all parents without regard to their mental condition.

In considering the statutory criteria of General Statutes § 17-43a (b), the trial court did not terminate the respondent's parental rights solely because of her mental condition. In its memorandum of decision, the trial court specifically stated that "[c]hronic schizophrenia is *not* a ground for termination of parental rights. The condition is significant only as it impacts upon the individual's ability to function as a parent." (Emphasis added.) Termination is warranted under General Statutes § 17-43a (b) when the parent's mental illness manifests itself in conduct demonstrative of an inability to care for her children. It was the respondent's conduct and relationship to her children, and *not* her status as a mentally ill person, which predicated the trial court's decision to terminate her parental rights.

There is no error.

In this opinion the other judges concurred.

---

rejected a claim that the ability of the court to deprive a person of his parental rights because of one's mental condition penalized one for mere status. *In re Juvenile Appeal (83–BC)*, 189 Conn. 66, 78–79, 454 A.2d 1262 (1983). In so doing, the court concluded that the legislature could weigh the interests of the child against the hardship imposed on the parent, and properly strike a balance at the point where the mental deficiency "is so great as to render the parent incapable of measuring up to the child's needs . . . ." Id.