[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action by writ, summons and complaint returnable to this court July 21, 1992. He seeks a dissolution of the parties' marriage on the ground of irretrievable breakdown, custody of the parties's minor child, and other relief as on file. The defendant wife admitted all of the allegations of the complaint in her answer, and filed a cross complaint, in which she also seeks a dissolution of the marriage on the ground of its irretrievable breakdown, custody of the parties' minor child, and other relief, as on file. The court appointed counsel for the minor child, and the wife was also represented by counsel throughout these proceedings, including trial. The husband had been represented during these proceedings by three different attorneys; each moved for permission to withdraw his appearance citing as a reason the breakdown of the attorney-client relationship.[1] The plaintiff appeared pro se at trial. The parties submitted financial affidavits, and each testified; both parties also introduced documentary evidence. In addition, Dr. Meier, a licensed clinical psychologist, testified. He was appointed by the court, by agreement of the parties, to perform an evaluation of the parents and the child. The plaintiff also introduced a videotape (Plaintiff's Exh. D) into evidence, which the court, by agreement of the parties, viewed in camera. The parties filed trial management reports, written claims for relief and proposed orders, and after the conclusion of the evidence, were permitted to file post trial briefs.[2]
The parents also submitted a written `marital dissolution agreement' at the commencement of trial, in which they joined in asking the court to approve. In the agreement, they stipulated that their marriage had broken down irretrievably, and provided for the resolution of issues relating to the assignment and distribution of their property, alimony, support and medical insurance for their minor child, They submitted the issues of custody, visitation, and attorney's fees for the attorneys for the defendant wife and the minor child to the court for determination and were heard thereon. CT Page 3331
From the evidence, the court finds the following facts.
The plaintiff husband married the defendant wife, whose birth name was Bozena G. Plesniarska, on August 15, 1983 at New Britain, Connecticut. The husband has resided continuously in this state for at least one year before the filing of his complaint, which was July 16, 1992. The parties have one minor child issue of their marriage, Anig T. Vartanian, whose date of birth is March 28, 1990. No other minor children were born to the defendant wife since the date of the parties' marriage. Neither parent or the minor child has been a recipient of public assistance. All statutory stays have expired and the court has jurisdiction.
The husband is an Iranian citizen, and is a legally resident alien, having resided in the United States for over sixteen years. He has a college degree in engineering and mathematics, and currently holds a valid electrician's license in the state of Connecticut, and is self-employed.
The wife was born in Poland, became a naturalized United States citizen, is a high school graduate, and works as a translator. The child was born in the United States. The husband lives in the family home in Colchester, and the wife and child reside with the wife's mother in New York State, approximately one hundred fifty miles from the husband's residence in Colchester, Connecticut.
In pendente lite orders, the wife was given custody of the child, subject to husband's rights of visitation, which were to be supervised. The husband has not been able to visit the child on a regular basis, for reasons which it is not necessary to delve into here. On two occasions, the visitation was supervised by the child's attorney; on others, it was supervised by a mutual friend of the parents.
The husband claims that it would be in the best interests of the child that the court adopt one of two alternative proposals he advances for the care and custody of the child. The first calls for custody of the child with him, and `unlimited' visitation with the mother. The second calls for joint legal custody to the parties, and primary residence with the mother and visitation with him to be not less than alternating weekends. In either case, he desires the parties' parenting plan to be subject to a large number of conditions which are stated in his trial CT Page 3332 management report.
The wife essentially proposes that the present situation continue, which is: sole custody of the child to her, visitation of the child with her father to be supervised by a professional in accord with Dr. Meier's recommendation, counselling for the child and therapy for the parents, and no contact between the parents in the child's presence.
This marriage of over ten years was punctuated by acts of violence committed by the husband against the wife. The parties separated on a number of occasions, finally in October, 1992, when the wife moved with the child to New York to live with her mother. The culminating act of physical violence involved the husband striking the wife with his fist, causing her to lose consciousness. He then tied her to a basement I-beam with a chain. Later, when she began screaming, he taped her mouth closed. Finally, he released her, and she later called the police. The wife sustained bruises and a black eye. The husband denies this assault and other acts of violence, but provided no credible explanation for the wife's injuries, and the court finds the wife's testimony as to the husband's violent acts credible.[3]
It is clear from the attitude and demeanor of the parties that the wife is genuinely in fear of the husband and is intimidated by him. He has acted toward her in a dominating and domineering manner, and has attempted to control her.[4]
As pointed out by Dr. Meier, the husband has a high level of anger and hostility. This, and his aggressiveness, are readily apparent in the court room, and have been observed by the family relations officer, as referenced in Dr. Meier's report. The husband has not been able during his visitation sessions with the child, to refrain or restrain himself from derogating the mother in the child's presence, interrogating the child about the mother's actions, and directly embroiling the child into his ongoing disputes with the defendant wife. Dr. Meier specifically stated in page 9 of his report:
 2. . . . Mr. Vartanian's denial of hostility is and aggressiveness, his degree of overt anger, and his negative statements about mother, observed by this evaluator and described (in the family relations report and Department of Social Services letter, both CT Page 3333 furnished to Dr. Meier) do raise serious concerns about his appropriateness with the child.
 4. . . . While mother has little direct evidence that father plans to take the child, his level of anger is such that actions that would hurt the mother can not be ruled out. He clearly has difficulty controlling his anger, can become threatening to those with whom he is angry, and can express the anger inappropriately. This pattern of behavior needs to be addressed with regard to the well being of the child.
Dr. Meier testified that such actions of the father would be harmful to the child and concluded and recommended that the mother have custody of the child with father's visitation to be supervised by a person `trained in social work, psychology or counseling', until it is clear that the father can refrain from inappropriate behavior in the child's presence.
Indeed, in the videotape introduced into evidence by the father, which portrayed a visit in the father's home with his child in the presence of the child's attorney, the father consumed an inordinate amount of time discussing the facets of this litigation and issues of finances, motions, etc., with the attorney in the presence of the child, instead of spending the time interacting directly with the child. There were a number of times that the child tried to get the father's attention during these conversations, but she could do so, only after persistent attempts. Although the court has no doubt that he loves the child, and his love for her is reciprocated, it is also clear that he is now motivated by and focused on objectives other than the child's best interests
It is also significant that the mother was the primary caretaker and provider for the child from the time of her birth to the present time, and is clearly a warm and loving parent to the child. The child is bright and active. She is healthy, well dressed, well fed and appears happy and well cared for. The mother has parenting skills which are superior to those of the father. In fact, the court's observation of the father's videotape leads the court to believe that while the father and child showed true affection toward each other, as also observed CT Page 3334 by the family relations officer, the father's ability to relate to the child, share activities with her and parenting skills were poor. "In the search for an appropriate custodial placement, the primary focus . . . is the best interest of the child, and the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. Cappetta v. Cappetta, 196 Conn. 10, 16 (1985). In considering which parent can, at this time, better promote the child's education, growth, development, well-being, and the child's best interests as a whole, the court agrees with the child's attorney and concludes from all of the evidence in this case, that the mother is the more appropriate parent, and hence the parent who should be awarded custody. The father's suggestion of joint legal custody is not workable or practical in this case, in the light of the parents' inability to communicate with each other, and the father's violent and intimidating actions toward the mother which would inexorably lead to confrontations, and have already done so in the presence of the child. In any event, the idea of joint legal custody must be rejected, as there has been no compliance with General Statutes 46b-56a. See Emerick v. Emerick, 5 Conn. App. 649,658-659 (1985); cert. dismissed, 200 Conn. 804 (1986).
With respect to visitation, the court is confronted with a sensitive and difficult determination. The mother offers visitation in the state of New York, and suggests that its Department of Social Services provide the supervision, which the mother indicates, it is willing to do. At the same time, the father is subject to arrest in the state of New York, as a result of a confrontational incident there involving the child's maternal grandmother and the mother states that as a result he will not enter that state. Moreover, the distance between the parents' homes is approximately 150 miles, which would involve a whole days' travel for father to exercise even a few hours of visitation. The court recognizes that ordinarily great weight should be given to the testimony of psychological experts in child custody determinations, see In re Nicolina T., 9 Conn. App. 598,605; cert. denied, 203 Conn. 804 (1986). However, the court must part company with Dr. Meier's recommendation that the father's visitation be supervised by a professional, in the light of its impracticability, in view of the present circumstances of the parties. No evidence was introduced of the availability of such a supervisory professional in any location in Connecticut reasonably convenient to the parties. Indeed, the court concludes, that if such a condition were imposed, whether in New York or in Connecticut, it would effectively cut off the father's CT Page 3335 visitation entirely, which would be a draconian result.
Dr. Meier's fees for the evaluation were ordered to be paid by the parties, equally, pendente lite. His fee for his testimony in this case is $375, which the court finds fair and reasonable.
The child's attorney submitted a bill in the amount of $3,170.25, which did not include the time he spent at trial or the work on his post trial brief. His billing rate is $150 per hour, and the court finds that a fair and reasonable fee for his services, including trial and post trial, should be in the amount of $3,500.
The defendant wife seeks an allowance of $1,500 toward her attorney's fees, which sum includes $500 previously ordered; she submitted a bill, Defendant's Exhibit 3, in the amount of $2,649.80, which appears to include the sum of $1,301.45 noted as `previous due for all cases'. The court finds that a fair and reasonable sum to be awarded for counsel fees is $1,000, under all of the circumstances, including the $500 previously ordered, and further finds that a denial of counsel fees to the wife would impair or undermine the other financial orders entered.
The court has reviewed the `marital dissolution agreement' submitted by the parties under all of the circumstances, and has considered the factors in General Statutes 46b-62, 46b-81, 46b-82
and 46b-84, and finds said agreement to be fair and equitable, and approves it and orders that it become part of the file. The court also orders, after considering all of the evidence in this case, and the above mentioned statutory factors, as follows:
A decree dissolving the marriage shall enter on the ground of irretrievable breakdown.
Sole custody of the minor child, shall be awarded to the defendant mother, subject to the father's rights of visitation, which shall be, every Saturday, from 11 am to 3 pm, at the Danbury Mall in Danbury, or some other public place mutually agreed upon by the parties. He may give the child lunch. This visitation shall be unsupervised, and the father shall remain no less than fifty feet from the mother, at all times. The court finds that regular visitation with father, is in the best interests of the child, even with his level of hostility and anger, and further finds that even if the father continues to `bad-mouth' the mother or inappropriately interrogate the child, CT Page 3336 in the light of the brief visitation periods ordered, there should be no significant harm to the child. In any event, the father is ordered not to `bad-mouth' the mother in the child's presence and further ordered not to interrogate the child about the mother's activities. Mother shall also arrange a weekly telephone call for the child to father's home every Wednesday at 7 p.m. collect.
The mother is further ordered to take the child to a pediatrician and a dentist not less than once per year. The mother is also ordered to obtain counseling for the child. She shall also promptly furnish the father with copies of the child's medical, dental and educational records as they become available.
Both parties shall participate in the parenting education program pursuant to Public Acts 1993, No. 93-319, forthwith.
The court shall retain jurisdiction over the issue of visitation, and for that purpose refers the matter of visitation to the family relations office of the Superior Court for a follow-up study, and continues the matter to August 29, 1994, for further hearing thereon.
The plaintiff is ordered to pay child support in the amount of $75 per week, to be secured by an immediate wage execution. This amount substantially deviates from the child support guidelines, however, this deviation is justified by the husband's assets and earning capacity, and therefore, it would be inequitable or inappropriate to apply the guidelines mechanistically. The husband shall be able to claim the child as a dependency exemption for state and federal income tax purposes for 1993 and subsequent years so long as he is current as of the end of each calendar year.
Each party shall provide for and maintain health and medical insurance for the minor child, if available through their places of employment, and each shall pay one-half (1/2) of the uncovered or unreimbursed health expenses for the child. An order pursuant to General Statutes 46b-84 (c) shall enter, and any parent seeking reimbursement for such expenses shall first send to the other a copy of all bills and an explanation of insurance company benefits. The sum due shall be remitted by the payor parent within thirty (30) days thereafter.
Pursuant to the parties' agreement, the defendant wife shall CT Page 3337 transfer, by quit claim deed, all her right, title and interest in and to the marital single family residence known as 277 Chestnut Hill Road, Colchester, Connecticut and the three family dwelling known as 232-234 Glen Street, New Britain, Connecticut, to the husband, subject to all liabilities and encumbrances thereon which he shall pay and save her harmless therefrom. He shall simultaneously execute and deliver to the defendant a promissory note in the amount of $15,000, payable without interest within one year from the date hereof. Said note shall be secured by a mortgage on both of the aforementioned real properties. The instruments effectuating these orders shall be executed and delivered within thirty (30) days hereof.
Neither party shall pay alimony to the other.
The plaintiff shall pay to the child's attorney the sum of $2750; the defendant shall pay the balance, or $750. These payments shall be made within one hundred twenty (120) days hereof.
The plaintiff shall pay toward the wife's attorney's fees the sum of $1000. Said payment to be made by monthly payments of $100 each beginning April 1, 1994.
The above noted attorney's fees shall be secured by a lien on the husband's interest in the `Robertson' mortgage.
Each party shall pay one-half (1/2) of Dr. Meier's fee for his testimony, the sum of $187.50 each, within sixty (60) days hereof.
Each party shall have and own the motor vehicle or vehicles currently used by them, and all other tangible and if intangible personal property in their possession, free of the other's claims.
The plaintiff shall pay all of the liabilities shown on Schedule 3 of his financial affidavit and save the defendant harmless therefrom; she shall pay the liability shown on Schedule 3 of her affidavit and save him harmless therefrom.
The plaintiff shall take, have and own his electrical contracting business, free of any claims of the defendant.
Teller, J. CT Page 3338