[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OR DECISION
I. FACTS
Jasmen W. was born on February 26, 1998 to Lori W., who was at that time residing at St. Angnes Family Center, a residential program for teenage mothers and their infants. Jasmen resided at St. Agnes until June 1, 1998 when Lori W. left the program. On June 4, 1998, Jasmen was placed with the Department of Children and Families under an Order of Temporary Custody. On June 4, 1998 the Department of Children and Families (hereinafter referred to as DCF) filed a neglect-uncared for petition on behalf of the above-named minor child alleging that the child was neglected in that the child was being denied proper care and attention, physically, educationally, emotionally or morally; that the child was being permitted to live under conditions, circumstances or association injurious to well-being; and uncared for in that the child was homeless. On February 9, 1999, the Court (Resha, J.) adjudicated the above-named minor child neglected and uncared for and entered a disposition of commitment for a period not to exceed twelve months. At that time, the Court ordered specific steps on behalf of Respondent Mother. On October 6, 1999, the Court (Eveleigh, J.) approved the Petitioner's permanency plan of termination of parental rights and found that reunification efforts with the Respondent parents were no longer appropriate.
On December 10, 1999, DCF filed a motion for extension of commitment and a petition of termination of parental rights on behalf of the above-named minor child alleging that the child had been abandoned by the father in that the father had failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; had been found in a prior proceeding to have been neglected or uncared for and the mother and father had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they would assume a responsible position in the life of the child; and there was no ongoing parent-child relationship with respect to mother and father that ordinarily develops as a result of the parents, having met on a CT Page 8150 continuing day to day bases the physical, emotional, moral, or educational needs of the child; to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child. On January 4, 2000, the Court (Eveleigh, J.) extended the commitment of the above-named minor child for a period not to exceed the twelve months. At that time, the Court also defaulted Respondent father for failure to appear, and entered a pro forma denial on behalf of the Respondent mother regarding the termination of parents rights petition. On March 9, 2000, the Court (Eveleigh, J.) took judicial notice of the court file. On March 9, 2000 and May 26, 2000, the termination of parental rights trial was conducted before the Court.
Jasmen W. has been in the care of her foster parents David and Christine Hunter since June 1, 1998. The Hunters have indicated their wish to adopt Jasmen should parental rights be terminated by the Court.
Jasmen's father, Anthony P., has been defaulted in all Juvenile court proceedings. Mr. P. has never contacted the Department of Children and Families regarding Jasmen.
Lori W. was in the care and custody of the Commissioner of the Department of Children and Families at the time Jasmen W. was born. At that time, Lori W. was not yet sixteen years of age. When Jasmen was placed in foster care a dispute had arisen between Lori W. and the staff at St. Agnes. Lori W. was transported to a hospital for psychiatric evaluation and Jasmen was placed in foster care. Lori W. was then moved to the Salvation Army Youth Shelter in Waterbury. In April 1999, Lori W. refused to participate in counseling or parenting services with DCF. She moved from Connecticut to Pennsylvania on or about October 1999. Lori W. currently resides with her current boyfriend, Scott M., in Pennsylvania. She is expecting her second child. Mr. M. testified that Lori W.'s current pregnancy is the result of a prior relationship.
II. LAW
The termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents so that the child is free for adoption. C.G.S. Sec. 45a-707 (8) "It is a most serious and sensitive judicial action". Anonymous v. Norton168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96, S.Ct. 294, 46 L.Ed.2d 268 (1975). In Re Michael M., 29 Conn. App. 112, 117-18,614 A.2d 832 (1992). When petitioning to terminate parental rights without consent, the Department of Children and Families must allege and prove by clear and convincing evidence one or more of the specific CT Page 8151 grounds set forth in Connecticut General Statutes 17a-112 (c) et seq. InRe Baby Girl B., 224 Conn. 263, 293, 618 A.2d (1992). "The same evidence certainly can establish more than one ground for termination." In ReShannon S. 41 Conn. Sup. 145, 157, 562 A.2d 79, aff'd, 19 Conn. App. 20,560 A.2d 993 (1989).
A. Pursuant to C.G.C. [C.G.S.] Sec. 17a-112 (c) the court finds by clear and convincing evidence that the Department of Children and Families has made reasonable efforts to locate the parents and reunify the parents with the child.
The father was duly noticed and defaulted in the termination proceedings. He has never contacted the Department regarding his child. The mother has been involved with the Department for several years, although during various periods, her location wasn't always known to the Department. Also, she was not always present during Court proceedings, although she did appear at trial. The Department of Children and Families offered Lori W. numerous services. However, in April 1999 she notified the Department that she would not participate in counseling or parenting services.
B. The Court finds by clear and convincing evidence that the following grounds for termination have been proven.
1. Abandonment by father
 The father has never been involved in the child's life. He has neither appeared in a court hearing nor inquired about his child at the Department of Children and Families.
 2. The child has been found in a prior proceeding to have been neglected and uncared for and the mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child they would assume a responsible position in the life of the child
 On February 9, 1999 this Court (Resha, J.) found the child to have been neglected and uncared for. The father has never expressed interest in the child. The mother has not complied with the specific steps ordered by this Court on February 9, 1999. In fact, in April 1999, she informed the Department that she would not attend counseling sessions or parenting classes. On October 6, 1999 this court (Eveleigh, J.) found that reunification efforts with the parents were no longer appropriate. CT Page 8152
 On October 22, 1998 Lori W. as examined by Dr. Martinez, a psychologist in the Danbury Judicial District. Dr. Martinez noted at that session that Lori W. is not ready to be a full-time single parent independently. "She would require intense assistance but is unwilling to expect it. The child is at the age when bonding occurs and needs to establish a safe parental bond. The stresses of being a single parent are far too intense for a vulnerable adolescent such as Ms. W. She does not moderate her actions with rational thoughts and tends to justify actions by blaming. Ms. W. is not capable of effectively parenting a child at the present time". In view of Lori W.'s resistance to parenting and counseling sessions as prescribed by the Department, the Court is loath to disturb the prior findings of Dr. Martinez.
 3. There is no ongoing parent-child/youth relationship with respect to the mother and father that ordinarily develops as a result of a parent having met on a continuing day to day basis the physical. emotional, moral or educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child.
 As found previously, the father has never been involved with the child or indicated any desire to visit with his child.
 With regard to this ground for termination the Court must determine that: first, no parent-child relationship exists and second, the Court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for the development of such a relationship. In Re Juvenile Appeal 1 Conn. App. 463, 477, 477 A.2d 795
cert. denied 193 Conn. 802, 474 A.2d 1259 (1984). Lori W. has had over two years to develop a parent-child relationship, but has failed to do so. Her complete absence from August 24, 1999 until November 9, 1999, without adequate excuse, is troubling to the Court. The absence certainly did nothing to foster any on-going parent child relationship. The fact that she had prior contact with her child does not preclude a determination that there has been no ongoing parent-child relationship, which the Court finds in this case. In Re Zejia M. 33 Conn. App. 12 (1993).
 The factors to be considered in deciding whether it would be in Jasmen's best interest to permit further time for a relationship with her mother to develop include: (1) the length of stay with the foster parents; (2) the nature of her relationship to her foster parents; (3) the degree of contact maintained with the natural parent and (4) the nature of her relationship to her natural parent. In Re Kezia M. 33 Conn. App. 12 (1993). In addition, the genetic bond shared by a CT Page 8153 biological parent and his or her child is certainly a factor to consider. McGaffin v. Roberts, 193 Conn. 393, 405, 479 A.2d 176
(1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1247, 84 L.Ed.2d 813
(1985).
 Lori W. has not acted as the full time caretaker for Jasmen W. since Jasmen was approximately three months old. She did not visit with Jasmen from August 24, 1999 until October 6, 1999 when the Court found that reunification efforts were no longer appropriate. She failed to attend a Court hearing on October 2, 1999, although her father was present. At that time no one was able to offer a current address for her. On November 9, 1999 she advised the Department of Children and Families that she had relocated to Pennsylvania. She did not deliver the full information concerning her new address until December 2, 1999. She last visited Jasmen on January 5, 2000. She has not sent cards, gifts or photos to Jasmen. Neither parent recognized Jasmen's second birthday in February 2000.
 Jasmen W. is very active and inquisitive. She is meeting or exceeding all developmental milestones. She is current on all her immunizations. She is considered to be a healthy child with no special needs. She was placed with David and Christine Hunter on June 1, 1998 and has remained in their home since that time. She has developed a healthy attachment to members of the Hunter family who would like to adopt her. Jasmen's primary attachment is to Mr. and Mrs. Hunter. As Dr. Martinez indicated, the child is at the age when bonding occurs and she needs to establish a safe parental bond. Therefore, the Court finds that the elements of this ground for termination have been proven by clear and convincing evidence. See C.G.S. Sec. 45a-717 (c)(1).
 Lori W. has a history of emotional issues for which she has not sought consistent treatment. She is not currently involved in treatment. She has relocated to Pennsylvania and is currently working as a bookkeeper. She has a good relationship with her boyfriend Scott and his family. See C.G.S. Sec. 45a-717 (e)(1).
 In the instant case Jasmen has been with her foster parents for approximately two years. She has developed a strong and caring relationship with them.
 Lori W. was offered weekly visitation with Jasmen since June 9, 1998. Interaction with Jasmen was limited during these visits. Lori W. would engage in conversation with the visitation worker and not relate to Jasmen. Further, she did not visit with Jasmen or make her whereabouts known to the Department from August 24, 1999 until November 9, 1999. Jasmen is not bonded to her mother. In addition, the CT Page 8154 psychological testimony or evidence from professionals is rightly accorded great weight in the termination proceedings. In Re Nicolina T, 9 Conn. App. 598, 605, 520 A.2d 639 cert. denied, 203 Conn. 804, 525 A.2d 519 (1987). Dr. Martinez stated that the lack of parental bond would contribute toward future psychological problems for Jasmen. In May 1999 Dr. Martinez found that the Hunters "react in a loving, engaging manner, and are sensitive of Jasmen's needs and stage development. They are inclined to stimulate her growth, and also express a desire to adopt her. Jasmen demonstrates familiarity, comfort and attachment to her foster parents. Jasmen appears to be developing well physically and emotionally under the care of the foster parents. Disrupting or terminating the attachment relationship that Jasmen has with her foster mother will result in emotional distress." She thinks it would not be in Jasmen's best interest to permit further time for a relationship with her mother to develop.
C. Termination is in the best interest of the child by clear and convincing evidence.
1. Timeliness, nature, and extent of services offered
 Services have been consistently offered to the mother since the Department of Children and Families initial involvement began to prevent removal from her home. Since Jasmen's initial placement of June 1, 1998 and throughout her placement, services have been offered to the mother and child to facilitate reunion of with the mother. The father has been unavailable for services. Lori W. refused to participate in parenting classes or psychotherapy as directed by the Department.
 2. The Department has made reasonable efforts to reunite the Family pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980, as Amended.
 The Department has made reasonable efforts to reunite the family since the child entered out of home placement on June 1, 1998. Services were offered to the mother since that time. Services included, but were not limited to, visitation, transportation, psychological evaluation of mother, individual counseling for mother, parent aid services and residential shelter placement for mother and child.
3. Specific Steps were ordered by the Court on February 9, 1999
Father was defaulted for his failure to appear.
 Lori W. has been substantially non-compliant with these steps, particularly the use of resources aimed at addressing her emotional CT Page 8155 issues. She has neither availed herself of individual treatment nor of parenting classes since the time that Specific Steps were ordered. She refused to attend any counseling or therapy sessions. She did participate in the psychological evaluation with Dr. Martinez, but failed to follow Dr. Martinez's recommendations to the effect that she enter a residential setting, which provided behavioral strategies, and that she take medication for depression and sleeping difficulties. Further, she failed to keep her whereabouts known to DCF as ordered in the steps. Her address was unknown from August 24, 1999 until November 9, 1999 when she notified the Department that she had moved to Pennsylvania.
 4. Emotional ties of child with respect to parents and any person exercising control
 Jasmen has never had a relationship with her father. She has exchanged affection with her mother during past visitations. However, there was a gap in the visitation which occurred from August 24, 1999 until January 5, 2000. Jasmen has formed a loving bond with her foster family. She is able to give affection to and accept affection from her foster mother and father and their daughter Julie. They exhibit a mutual display of affection and caring. She relies upon her foster parents for all of her needs, which are well provided in a stable home environment. The foster parents are the psychological parents to Jasmen W. in that they share a mutual bond of trust and love.
5. Jasman W. was born on February 1998.
 6. The parents have not made sufficient efforts to adjust their circumstances to make it in the best interest of the child to return her to their care.
 As stated previously, the father has shown no interest in his child at any time.
 Lori W. has not made significant efforts to adjust her circumstances. Lori W. refused to attend parenting class or any psychotherapy. She has relocated and obtained employment. However, she refused to follow Dr. Martinez's recommendations to address her problems of low impulse control, low problem solving skills and intolerance for dialogue, and intense rage easily acted out. She failed to visit with the child from August 24, 1999 through January 5, 2000. The length of time was occasioned by her failure to notify DCF of her exact location until December 1999. She has failed to send any cards or gifts to Jasmen.
 7. Neither parent has been prevented from maintaining a meaningful relationship with Jasmen by the unreasonable act or conduct of any person or by economic circumstances
 Lori W. was allowed weekly visitation by the Department until her absence from August 24, 1999 through November 9, 1999. Mr. P. was never prevented from seeing Jasmen.
III. CONCLUSION
 Based upon the foregoing, the Court finds that by clear and convincing evidence, the statutory grounds for Termination exist and that termination of parental rights is in the best interest of Jasmen W. Therefore, the court orders that the parental rights of Lori W. and Anthony P. be terminated, and appoints the Commissioner of the Department of Children and Families as Statutory Parent.
By The Court
Eveleigh, J. CT Page 8156