[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
By petitions filed July 8, 1994, the Connecticut Department of Children and Families (hereinafter "DCF") seeks to terminate the parental rights of the mother and fathers of two boys, Demarco A. and Joshua A. The mother of both boys is Christine A. who hereinafter will be referred to as "mother." Demarco was born on March 4, 1989. Two putative fathers of Demarco were provided notice of this action: Kevin O. was defaulted for his failure to appear; Marc J. was withdrawn from this action by a motion to amend the petition granted on December 15, 1994. Two putative fathers of Joshua were provided notice of this action: Kevin O. and Brian L. were defaulted for their failure to appear, and did not participate in the trial.
As to all putative fathers three grounds for termination were alleged to have existed for more than one year: abandonment, acts of commission or omission, and no ongoing parent-child relationship.
As to mother DCF alleged only that she had failed to rehabilitate. The record establishes that Demarco and Joshua were adjudicated uncared for on June 9, 1993, and committed to DCYS for 18 months. On November 8, 1994, the commitment was extended for an additional 18 months effective December 9, 1994. On May 22, 1996, commitment was extended without prejudice until further order of the court.
Mother vigorously defended in a trial which lasted eight days. The court heard testimony from the following witnesses for DCF: Karen Smith, a DCF social worker; Mark Kaplan, Ph.D., a licensed psychologist; Kathleen Whelan-Ulm, clinical coordinator for residential treatment at the Rushford Center; Timothy Cunningham, clinical coordinator of MISA (Mentally Ill Substance Abusers) Project at Rushford Center; Barbara Tylenda, Ph.D., a licensed clinical psychologist with the Connecticut Children's Medical center (formerly known as Newington Children's Hospital); Mark Kaplan, Ph.D., a licensed psychologist; and Brian Heath, Ph.D., a licensed psychologist. CT Page 5118-B The petitioner placed numerous exhibits into evidence.
Mother presented testimony from the following witnesses Vicki, a foster mother of Demarco; Alexander Carre, M.D., a licensed psychiatrist with the Community Health Center; Judith Fava, a psychiatric social worker with the Boneski Treatment Center; Richard, a friend of mother; Mary Picone, a social worker/therapist from Community Health Center; Stephen Cremin-Endes, a case manager from Community Health Center; and John Butler, an AIDS educator and health outreach worker. Mother introduced several exhibits as well. Counsel for the children offered no testimony of witnesses, but did introduce some exhibits. All counsel submitted substantial briefs.
 II
The general authority of the Superior Court to terminate parental rights to committed children such as Demarco and Joshua is now found in Connecticut General Statutes § 17a-112(b), which provides, in pertinent part, as follows:
 The superior court upon hearing and notice . . . may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any non-consented parent, [the circumstances giving rise to the need for termination have existed] over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year.
The question of termination of parental rights was recently discussed in the case of In re Jessica M., 217 Conn. 459
(1991), where the court, at pages 464, 465 and 466, stated in part as follows:
 Although the severance of the parent-child relationship may be required under some circumstances, the United States Supreme Court has repeatedly held that the interest of parents in their children is a fundamental constitutional right that CT Page 5118-C "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551
(1972); see also In re Juvenile Appeal (83-CD), 189 Conn. 276, 295, 455 A.2d 1313
(1983) (noting that "it is both a fundamental right and the policy of this state to maintain the integrity of the family"). Termination of parental rights does not follow automatically from parental conduct justifying the removal of custody. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
. . .
 As a matter of statutory fiat, consideration of the best interests of the child cannot vitiate the necessity of compliance with the specified statutory standards for termination. In re Barbara J., 215 Conn. 31, 45, 574 A.2d 203 (1990); In re Luis C., 210 Conn. 157, 165, 554 A.2d 722 (1989); In re Juvenile Appeal (Anonymous), supra, 177 Conn. 771-72; see also O. Ketcham and R. Babcock, "Statutory Standards for the Involuntary Termination of Parental Rights," 29 Rutgers L. Rev. 530, 539 (1976). We have observed, however, that "(i)nsistence upon strict compliance with the statutory criteria before termination of parental rights and subsequent adoption proceedings can occur is not inconsistent with concern for the best interests of the child." In re Juvenile Appeal (Anonymous),
CT Page 5118-D supra, 177 Conn. 672. A child, no less than a parent, has a powerful interest in the preservation of the parent-child relationship. Santosky v. Kramer, supra, 760.
In a proceeding for termination of parental rights, the petitioner must prove a ground alleged in the petition by clear and convincing evidence. In re Theresa S., 196 Conn. 18
(1985). The ground alleged for termination of mother's rights regarding these boys is based on Connecticut General Statutes § 17a-112(b)(2).
Section 17a-112(b)(2) provides for termination when:
 . . . the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child . . .
If the petitioner meets its burden, the court must then decide whether termination of parental rights is in the best interest of the child, and in doing so, the court must consider and make findings in writing of the six factors set out in Connecticut General Statutes § 17a-112(d). If the court decides it is in the best interest of the child to terminate parental rights, the petition should be granted and the petitioner appointed the statutory parent of the child. The court does not consider the "child's best interests" unless grounds for termination have been proven by clear and convincing evidence.
The adjudication on the petition may consider facts as of the last day of filing or amending the petition, which in this case is July 8, 1994, as to mother. In deciding the disposition, the court may consider facts as of the last date of trial including those facts contained in the mandatory social study. In re Juvenile Appeal, 192 Conn. 254 (1984). CT Page 5118-E
The events which preceded the filing of DCF's petition, as to mother, weave a tragic tale of substance abuse, physical abuse, mental illness and neglect all to the extreme detriment of mother and boys. Compelling testimony was elicited from several witnesses and mother's records that she has attempted unsuccessfully to overcome her drug addiction through the intervention of several programs, including SCADD, Boneski Treatment Center, Stonington Institute, Rushford Center, Connecticut Valley Hospital, Elmcrest Hospital, Community Health Center, and the Norwich Department of Social Services.
In February, 1993, mother was incarcerated for a violation of probation. In April, 1993, she was incarcerated again. In May, 1993, she was ordered by the court to complete a drug rehabilitation program. Substance abuse was identified as the major factor in mother's criminal difficulties as well as the commitment of her boys to DCF.
Mother completed the 90-day in-patient program as ordered in May, 1993. This was at the Boneski Treatment Center. Upon discharge, it was strongly recommended that mother participate in a halfway house, the Katie Blair Program. Mother refused, and shortly thereafter, relapsed into further drug use. During this period of time, her visits and contact with her boys were inconsistent and infrequent.
In November of 1993, mother was discharged from Mind Management Services, Inc. for noncompliance. In May of 1994, mother entered the Milestone Program, presenting as one with a long history of substance abuse, motivated to change by hopes of life with her two boys. Her discharge summary of June 17, 1994, documents mother's continued drug use and failure to follow through on counselor's recommendations. Mother's pattern of self-determination in treatment, particularly with regard to after care, was disastrous, as it led to renewed substance abuse.
Mother's rehabilitation problems also applied to her expectations as to visiting her boys. Mother initially was to have supervised visits, and in November, 1993, mother was accepted into the Smith Bent Visitation Center. Mother initially was compliant with her visitation schedule, but in January, 1994, mother began to miss most scheduled visits. These missed visits coincided with drug relapses. CT Page 5118-F
"`Personal rehabilitation,' as used in [§ 17a-112(b)(2)], refers to the restoration of a parent to his or her former constructive and useful role as a parent. Our Supreme Court has held that §17a-112(b)(2) requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable `within a reasonable time.'" (Citation omitted; internal quotation marks omitted.)In re Felicia D., 35 Conn. App. 490 (1994).
Mother loves her boys, and this love is motivation enough to return mother to treatment and to visitation, but the tragedy of this case is that mother's love is inadequate motivation to successfully rehabilitate herself. The petitioner has proved its ground for termination by clear and convincing evidence.
 III
As to the putative fathers, all of whom were defaulted for their failure to appear, little need be addressed. DCF proved by clear and convincing evidence that the last contact with either boy was in March, 1993, and that no putative father had, or attempted to have, an ongoing parent-child relationship. Their total lack of interest in their putative sons makes it clear no time or effort should be given to establishing one without grave detriment to the boys. Thus, all putative fathers' rights should be terminated based on both §§ 17a-112(b)(1) and 17a-112(b)(4).
 IV
Dispositionally, the court must determine by clear and convincing evidence that continuation of mother's parental rights is not in the children's best interest. In reTabitha P., 39 Conn. App. 353, 361-2 (1995). General Statutes § 17a-112(d) mandates that the court consider and make written findings as to seven factors. These will be considered in turn, and as to each, the court finds the evidence proven by clear and convincing weight.
 A.
As stated in part II, mother availed herself of substance abuse treatment, mental health counseling, and visitation support. While some of these referrals were CT Page 5118-G self-initiated, DCF supported mother in all. However, mother also failed to accept and cooperate with aftercare programs recommended by DCF and treatment providers. Mother was inconsistent or noncompliant in her treatment, repeatedly relapsing into substance abuse. During these periods of relapse, mother would often, against agency advice, involve herself with a partner who was a substance abuser or physically abusive to mother. Mother provided testimony that her substance abuse was interwoven with mental illness, and they had to be treated jointly. Mother seeks to absolve herself because no single unified program was provided to address all of her problems, but the evidence shows that mother did not cooperate sufficiently for any effective treatment. Her treating psychiatrist, Dr. Carre, testified that mother rejected the long-term treatment he recommended.
 B.
Mother's boys have been committed since June 6, 1993. Mother was ordered to end her substance abuse, maintain consistent visitation, and to undergo the counseling necessary to maintain sobriety and visitation. DCF supported multiple program admissions, relocations, new treatment providers, all in an attempt to defeat mother's addictions. Mother's pattern of beginning to treat and then ending treatment with a contemporaneous relapse makes it clear she has failed to comply.
 C.
Demarco and Joshua are not in the same foster home and have had differing relationships with mother. Joshua was diagnosed by Dr. Tylenda as having reactive attachment disorder related to his infancy experience in mother's care. Joshua was determined to be at risk in developing the foundations for emotional trust and security. It was recommended that he be placed in a specialized foster home as an only child and not be placed with his brother or have contact with mother. Prior to this placement, which mother concurred in, Joshua's position was similar to Demarco's. Both boys were bonded with mother, but were given much inconsistency by mother in terms of visits, phone calls or follow through.
Demarco has a history of enuresis, aggressive, competitive, non-compliant behavior, all related to the instability of his early life in mother's care. With CT Page 5118-H substantial counseling and consistent, loving foster care, he has improved greatly.
Both boys have developed stronger, nurturing bonds with their foster parents, who have provided the stable home their mother did not provide. Drs. Heath and Kaplan both testified that mother's continued relapses and instability were detrimental to her boys and that termination was in their best interest. Psychological testimony from professionals is accorded great weight in termination proceedings. In reNicolina T., 9 Conn. App. 598, 605, 520 A.2d 639 (1987). Given the tender age of the boys, their future stability must be assured.
 D.
Demarco was born March 4, 1989, and Joshua on September 5, 1992.
 E.
As noted above, mother has an extensive history of false starts to recovery. These are accompanied often by a pattern of contact with her sons for a brief time. Mother agreed to participate in counseling, treatment and visitation, and all her attempts ended in relapse and failure to maintain visits or contact. Mother concurred in the termination of her visits with Joshua, but made no attempt to maintain communication with him through DCF or foster mother.
 F.
Mother has had relationships with inappropriate, often abusive, partners, but all were derided by DCF and her treatment providers. No person involved with the boys as service provider, worker, or foster parent has interfered with mother, other than the termination of her visits with Joshua in order to treat him. Mother concurred in this.
 G.
DCF made reasonable efforts in attempting to secure counseling, treatment, visitation and housing for mother.
V CT Page 5118-I
The petition seeking to terminate the parental rights of Christine A., Kevin O., and Brian L. is hereby granted and judgment may therefore enter terminating their parental rights with respect to Demarco and Joshua A. Pursuant to General Statutes § 17a-112(f), it is further ordered that DCF be appointed statutory parent so that Demarco and Joshua can be placed in adoption. The statutory parent shall report to the court within ninety days on a case plan for each boy, and at least yearly thereafter until adoption is finalized.
Dated at Montville, Connecticut, this 18th day of July, 1996.
John C. Driscoll, Judge